UNITED STATES of America,
Plaintiff–Appellee,

v.

William D. SASSANELLI,
Defendant–Appellant.

No. 95–2074.

United States Court of Appeals,
Sixth Circuit.

Submitted March 13, 1997.

Decided July 3, 1997.

---

Christopher P. Yates (briefed), Federal Public Defenders Office, Grand Rapids, MI, for Plaintiff–Appellee.

Douglas R. Mullkoff (briefed), Ann Arbor, MI, for Defendant–Appellant.

Before: BOGGS and BATCHELDER, Circuit Judges; and FORESTER, District Judge.*

## OPINION

BOGGS, Circuit Judge.

The defendant below, William Sassanelli, appeals his conviction on twenty-six counts,

---

* The Honorable Karl S. Forester, United States District Judge for the Eastern District of Kentucky, sitting by designation.

all of which stem from his participation in a scheme to defraud his employer, Budget Rent A Car. He also appeals the resulting sentence. For the reasons explained below, we affirm his conviction but reverse his sentence, and remand the case to the district court for further proceedings.

## I

Sassanelli was the general manager of car rental operations for Budget Rent A Car's Detroit office. In November 1989, Budget began to expand its facilities at Detroit Metropolitan Airport. Sassanelli agreed with Michael Kallen, the president of Kendall Construction Company, to hire Kendall as the general contractor for the construction project. Sassanelli and Kallen also agreed to submit fraudulently inflated or fictitious subcontractors' invoices to Budget for payment. The total loss to Budget from this scheme was approximately $834,000. Dwight T. Lynn, the owner of one of the subcontractors on the project, Lynn Equipment Company, also participated in the scheme; at Sassanelli's direction, he submitted inflated and fictitious invoices and passed the resulting profits along to corporations controlled by Sassanelli and Kallen.

The construction project was originally expected to cost $1.5 million, but ultimately cost Budget over $5.5 million. In 1991, Budget officials became suspicious of the cost overruns and demanded an explanation from Sassanelli. On April 8 of that year, Sassanelli and Kallen collaborated on a letter from Kendall Construction to Sassanelli that provided a false explanation for the overruns. Shortly thereafter, Budget fired Sassanelli. However, because he was warned in advance of his discharge, he was able to shred some documents in his office before he was told to leave.

The Federal Bureau of Investigation investigated the alleged fraud throughout 1991. While the criminal investigation was in progress, Budget filed a civil action against Sassanelli and the other participants in the fraud. In the course of that litigation, on November 14, 1994, Sassanelli submitted an affidavit in opposition to Budget's motion for summary judgment. Paragraph 12 of the affidavit states:

> I have no knowledge that any of the individual contractors and/or companies that are alleged by Michael Kallen to have participated in a kick-back scheme with him nor did I participate with them either directly or indirectly in any type of kick-back scheme.

That paragraph was perjurious, as well as ungrammatical.

On November 22, 1994, a federal grand jury indicted Sassanelli on two counts of mail fraud, in violation of 18 U.S.C. § 1341; eleven counts of interstate transportation of a check obtained by fraud, in violation of 18 U.S.C. § 2314; and twelve counts of money laundering, in violation of 18 U.S.C. § 1956. On January 24, 1995, a grand jury returned a second indictment, charging him with a single count of perjury, in violation of 18 U.S.C. § 1621. Although a number of Sassanelli's allegations in his affidavit were false, the perjury count rested solely on paragraph 12.

The two indictments were consolidated pursuant to FED.R.CRIM.P. 13, and the case proceeded to trial on April 27, 1995. At trial, Lynn testified that at one point he told Kallen that he no longer wished to participate in the scheme. Lynn testified that Kallen responded by saying that if Sassanelli heard that, he would "go crazy." Shortly thereafter, Sassanelli visited Lynn. In Lynn's words, Sassanelli "pulled up and got out of his car and opened—he was out of his car, and pointed at the compartment between the seats and said, there is a .9 millimeter Baretta [sic] in there. I'm going to blow your blank head off. I took that as a serious threat, yes." Lynn testified that, after that encounter, he decided that he would be wise to continue his participation in the scheme. After Lynn's testimony, the government moved to enter into evidence a copy of Sassanelli's permit to carry a 9–millimeter Beretta. The district court overruled Sassanelli's objection to the introduction of the permit under FED.R.EVID. 403.

At the conclusion of the trial, the district court instructed the jury that

for the crime of perjury, the government must prove the following three essential elements beyond a reasonable doubt:

1. That the defendant signed the affidavit described in the indictment and was under an oath at the time that he signed it;

2. That the affidavit was false, as described in the indictment; and

3. That the defendant knew at the time that the affidavit was false.

At no time did the district court instruct the jury that materiality was an element of the crime of perjury. On May 12, 1995, the jury found Sassanelli guilty on all counts, including the perjury count. At sentencing, the district court imposed a two-level sentencing enhancement on Sassanelli for obstruction of justice, based on Sassanelli's further perjury in the criminal trial. Accordingly, the district court sentenced Sassanelli to concurrent prison terms of 60 months for mail fraud, 60 months for perjury, 67 months for interstate transportation, and 67 months for money laundering. Sassanelli now appeals, raising three arguments. We consider each in turn.

## II

■ Sassanelli first argues that his conviction on all counts should be reversed because his handgun permit should have been excluded from evidence under FED.R.EVID. 403. We review a district court's Rule 403 determination only for an abuse of discretion. See United States v. Garcia, 20 F.3d 670, 672 (6th Cir.1994). Under such a standard of review, this court takes a maximal view of the probative effect of the evidence and a minimal view of its unfairly prejudicial effect, and will hold that the district court erred only if the latter outweighs the former. See United States v. Sanders, 95 F.3d 449, 453 (6th Cir.1996). Sassanelli argues that the introduction into evidence of the permit was erroneous even under this highly deferential standard of review; since Lynn never saw the gun and did not know about the permit, the permit was irrelevant to any material issue.

We disagree. If anything, Lynn's ignorance of the permit added to its probative force. The permit independently corroborated Lynn's testimony; the fact that the defendant did in fact own a Beretta tended to establish the truthfulness of Lynn's statement that Sassanelli threatened him by referring to a Beretta. In turn, Lynn's testimony was highly probative of Sassanelli's role in the fraud. Given that the defendant did not argue either below or on appeal that Lynn's testimony itself should have been excluded, any additional prejudice arising from the introduction of the permit was minimal. Therefore, we cannot state that the district court abused its discretion by admitting the permit into evidence.

## III

■ Sassanelli next argues that his perjury conviction under 18 U.S.C. § 1621 should be reversed because the district court failed to instruct the jury with respect to all of the elements of the crime. As noted above, the district court instructed the jury with respect to three of the elements of the crime of perjury, but failed to instruct them that they must also find that the false statement was material. This instruction was in accord with our court's precedents at that time, which held that, while materiality was an element of perjury, the trial court could hold a statement to be material without submitting that issue to the jury. See United States v. Adams, 870 F.2d 1140, 1146–47 (6th Cir. 1989); United States v. Abadi, 706 F.2d 178, 180 (6th Cir.1983). Perhaps in recognition of these precedents, Sassanelli did not object to the instruction.

About a month later, the Supreme Court cast doubt on those precedents in United States v. Gaudin, 515 U.S. 506, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995). The Court reviewed a conviction under a different section, 18 U.S.C. § 1001, for making a materially false statement in a matter within the jurisdiction of a federal agency. The trial court had failed to submit the element of materiality to the jury. The Court noted that the Fifth and Sixth Amendments "require criminal convictions to rest upon a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt," and unanimously held that the trial court violated

that rule by reserving the issue of materiality for its own decision. *Gaudin*, 515 U.S. at 508–10, 115 S.Ct. at 2313. In so doing, the Court thus rendered suspect the jury instructions on perjury given in Sassanelli's case. However, although *Gaudin* was decided more than three months before his sentencing, Sassanelli never filed a motion for a new trial.

The government argues that Sassanelli cannot satisfy the four-part test under FED. R.CRIM.P. 52(b) for appellate court reversal based on an erroneous instruction, where the defendant failed to object before the district court: (1) that the instruction was error; (2) that the error was plain; (3) that the plain error affected the defendant's substantial rights; and (4) that the court should exercise its discretion to correct the error because the error "seriously affected the fairness, integrity, or public reputation of judicial proceedings." *United States v. Olano*, 507 U.S. 725, 732, 113 S.Ct. 1770, 1776, 123 L.Ed.2d 508 (1993); *see United States v. Jones*, 108 F.3d 668, 670 (6th Cir.1997) (en banc). In response, Sassanelli argues that "plain error" analysis should not apply. He reasons that the district court's error in this case was a structural error much like a failure to instruct the jury on reasonable doubt, *see Sullivan v. Louisiana*, 508 U.S. 275, 279–80, 113 S.Ct. 2078, 2081–82, 124 L.Ed.2d 182 (1993), and that, since structural errors can never be deemed harmless, they must also be deemed to satisfy the requirements of Rule 52(b).

Sassanelli's argument is directly refuted, and his case is controlled, by the recent decision of the Supreme Court in *Johnson v. United States*, —— U.S. ——, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997), which held that, in a direct appeal from a federal conviction, even structural errors are subject to plain error analysis:

> Petitioner argues that she need not fall within the "limited" and "circumscribed" strictures of *Olano*, because the error she complains of here is "structural," and so is outside Rule 52(b) together. But the seriousness of the error claimed does not remove consideration of it from the ambit of the Federal Rules of Criminal Procedure.

—— U.S. at ——, 117 S.Ct. at 1548. The petitioner in *Johnson* had been convicted of making a materially false statement to a grand jury, in violation of 18 U.S.C. § 1623. As in the present case, the trial court had failed to submit the element of materiality to the jury, but the petitioner had not objected to that failure. The Court applied the four-part test under Rule 52(b), and held that the trial court erred under *Gaudin* and that the error was "plain," even though *Gaudin* had not been decided at the time of the petitioner's conviction. The Court assumed, without deciding, that the error was structural, thereby establishing that the petitioner's substantial rights were affected and that the third part of the *Olano* test was satisfied. However, the Court held that it could not notice the error because the failure to submit the element to the jury did not "seriously affect the fairness, integrity, or public reputation" of the petitioner's trial; the evidence supporting materiality was overwhelming, and the petitioner had not seriously attempted to controvert that evidence either at trial or on appeal. *Johnson*, —— U.S. at ——, 117 S.Ct. at 1550.

Sassanelli's case is identical to *Johnson* in all relevant respects. The district court erred under *Gaudin* in reserving the issue of materiality to itself. Despite the fact that our court's precedents at the time allowed the district court to do so, that error was plain. As the Supreme Court did in *Johnson*, we will assume, without deciding, that Sassanelli is correct that the improper jury instruction was a structural error, and that his substantial rights were affected. However, like the petitioner in *Johnson*, Sassanelli has not made any attempt to argue that his false affidavit was not material. A statement is material if it has " 'a natural tendency to influence, or be capable of influencing, the decision of the decisionmaking body to which it is addressed.' " *Gaudin*, 515 U.S. at 509, 115 S.Ct. at 2313 (quoting *Kungys v. United States*, 485 U.S. 759, 770, 108 S.Ct. 1537, 1546, 99 L.Ed.2d 839 (1988)) (internal brackets omitted). Sassanelli's false affidavit spoke directly to the subject of the civil litigation in which it was offered; there can be no serious argument that his denial of any involvement in the scheme was not "capable

of influencing" the civil court's consideration of the merits of Budget's claim against Sassanelli. Since "the fairness, integrity, or public reputation of judicial proceedings" were not compromised by the district court's error, we are not free to exercise our discretion under FED.R.CRIM.P. 52(b) to notice the error. Accordingly, we affirm Sassanelli's conviction on all counts.

### IV

■ At the sentencing hearing, the parties discussed the Probation Officer's proposed enhancement for obstruction of justice, and Sassanelli's counsel argued that the court could impose the enhancement only if it identified specific instance of perjury by Sassanelli at trial, and specifically found that the perjury was material. The court responded:

Number one is the Court finds—and I think Mr. Lustig's right too. I have to make a specific finding.

The Court makes the specific finding that the testimony offered at trial didn't— did include perjury, to wit—and more particularly in relation to—almost everything that Mr. Sassanelli said was contrary to what the Court believes were the facts in this particular matter, as articulated by the other witnesses. And, therefore, the Court believes, number one, that there is no double-dipping so to speak, because on the perjury charge itself there's no points added.

And as to the perjury at the time of trial, the Court believes that the two points should be added in and will do so.

At another point in the hearing, the district court stated that it

is concerned in relation to the perjury. The Court believes—I mean, every other witness without exception said something contrary to that which was Mr. Sassanelli's position in this particular matter, the fact that this whole scheme could not have come close to working but for the fact that Mr. Sassanelli was placed in a position by his employer to be able to be in a position to do this. If it weren't for him none of this could have happened because he was the one that had to approve it and do all those kinds of things.

Sassanelli argues that the district court's discussion was not sufficiently specific to justify an obstruction of justice enhancement, and we agree.

Under USSG § 3C1.1, the sentencing court is obligated to increase the defendant's offense level by two levels if "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense." The commentary to the guideline provides that "committing, suborning, or attempting to suborn perjury" is within the scope of conduct requiring the sentencing enhancement. USSG § 3C1.1, comment. (n.3(b)). In *United States v. Dunnigan,* 507 U.S. 87, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993), the Supreme Court upheld the constitutionality of the guideline. However, a sentencing enhancement for perjury under § 3C1.1 must be limited to those cases in which the defendant intentionally lied on the stand. Because the guideline was "not intended to punish a defendant for the exercise of a constitutional right," USSG § 3C1.1, comment. (n.1), an enhancement is not warranted if the defendant merely testified untruthfully due to mistake or confusion. *Dunnigan,* 507 U.S. at 94, 113 S.Ct. at 1116. Accordingly, the district court may not rely solely on the jury's verdict, but must instead make an independent finding that the defendant committed perjury. *See Mathews v. United States,* 11 F.3d 583, 587 (6th Cir.1993).

In order to minimize the danger that application of the guideline would discourage defendants from testifying truthfully at trial, the Supreme Court has mandated that a district court must make a specific finding that the defendant committed perjury before imposing the enhancement.

[I]f a defendant objects to a sentence enhancement resulting from her trial testimony, a district court must review the evidence and make independent findings necessary to establish a willful impediment to or obstruction of justice, or an attempt to do the same, under the perjury definition we have set out. When doing so, it is preferable for a district court to address

each element of the alleged perjury in a separate and clear finding. The district court's determination that enhancement is required is sufficient, however, if, as was the case here, the court makes a finding of an obstruction of, or impediment to, justice that encompasses all of the factual predicates for a finding of perjury.

*Dunnigan,* 507 U.S. at 95, 113 S.Ct. at 1117 (citations omitted).

Our court has since added its own gloss to *Dunnigan.* In order to fulfill the Supreme Court's direction that an independent finding of perjury is required, and in order to provide the appellate court with a meaningful record to determine that such an independent finding has been made, we have held that in the usual case the sentencing court must identify particular examples of the defendant's untruthful testimony upon which it bases the § 3C1.1 enhancement.

> To comply with the Supreme Court's directive in *Dunnigan,* the sentencing judge must identify for the record at least some specific instances of conflicting testimony and specify which portions of the defendant's testimony he finds materially perjurious. The judge must, at least briefly, explain why the intentional perjury was material.

*United States v. Spears,* 49 F.3d 1136, 1143 (6th Cir.1995) (citations omitted).

█ Under the precedents of the Supreme Court and of this court, then, the district court must fulfill two requirements; first, it must identify those particular portions of the defendant's testimony that it considers to be perjurious, and second, it must "either make specific findings for each element of perjury or at least make a finding 'that encompasses all of the factual predicates for a finding of perjury.'" *United States v. Comer,* 93 F.3d 1271, 1282 (6th Cir.) (quoting *Dunnigan,* 507 U.S. at 94, 113 S.Ct. at 1116), *cert. denied,* —— U.S. ——, 117 S.Ct. 595, 136 L.Ed.2d 523 (1996). While the latter rule has been held by the Supreme Court to be required under § 3C1.1, the former rule is one of our own creation to assist our review of sentencing enhancements under that guideline. *See United States v. Clark,* 982 F.2d 965, 969 (6th Cir.1993) (declining to reverse on ground of inadequate findings, but

directing that "the better practice, and the requirement that should be followed hereafter" is to identify specific perjurious statements).

█ Because that rule is essentially one that we have developed under our supervisory powers, we have never insisted on rigid adherence to its terms, so long as the record below is sufficiently clear to indicate those statements that the district court considered to be perjurious and that the district court found that those statements satisfied each element of perjury. For example, we have held that, where the record reveals that the government has proffered a clear and detailed list of the defendant's perjurious statements, the district court need not parrot that list so long as it makes clear that it has independently adopted the government's version. *See United States v. Ledezma,* 26 F.3d 636, 644 (6th Cir.1994). We also have held in an unpublished opinion that where the defendant's testimony appears to be "pervasively perjurious," the district court is not obligated to recite the perjury line by line, so long as its findings encompass the factual predicates necessary for a finding of perjury; in such cases, there is no danger that an enhancement will be imposed solely because the defendant exercised his right to testify, and the need for the prophylactic rule imposed by *Clark* and *Spears* is absent. *See United States v. Crowder,* No. 94–1576, 1995 WL 768990, at *8 (6th Cir. Dec.28, 1995). However, we must reverse the sentence if there was no indication at the sentencing hearing as to what statements were contended to be materially untruthful; we may not rely on our own review of the record to find particular statements to be perjurious and then to infer that the district court had the same statements in mind. *See Spears,* 49 F.3d at 1144.

In the present case, the Probation Officer did not identify any particular statements in the Pre–Sentence Report as perjurious; instead, the PSR only stated that Sassanelli "apparently testified untruthfully at trial." At the sentencing hearing, the government did not attempt to clarify the PSR's cryptic statement, but merely argued that "[t]he sentencing enhancement should come from the false testimony given by Mr. Sassanelli at trial." And, as described above, the district

court stated broadly that it considered "almost everything" that Sassanelli said at trial to be perjurious; it did not identify any examples of such perjury, and it did not attempt to apply the elements of perjury to such examples, as required by *Dunnigan* and *Spears.*[1] Therefore, we are obligated to reverse Sassanelli's sentence and remand this case for further proceedings with regard to the propriety of a § 3C1.1 enhancement. On remand, the district court is instructed to identify with particularity the statements made by Sassanelli at trial that it considers to be perjurious, and to make a specific finding that each such statement upon which it relies satisfies each of the elements of perjury.

## V

The judgment of the district court, insofar as it enhanced Sassanelli's sentence under USSG § 3C1.1, is REVERSED. In all other respects, the judgment of the district court is AFFIRMED. We REMAND this case to the district court for further proceedings consistent with this opinion.

---

1. The government argues that the district court failed only to state that it found Sassanelli's perjurious statements to be material, and that such a failure does not require a reversal, since materiality is a question of law. *See United States v. Seymour,* 38 F.3d 261, 264 (6th Cir. 1994). As noted above, the district court's error was not limited to a failure to recite the element of materiality, and thus the government's argument is unavailing. Although there is some doubt that the rule established by *Seymour* would survive *Gaudin* 's characterization of materiality as a factual element of the crime of perjury, we need not consider that issue to dispose of this appeal.