**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Melanie Ann MILLER, Defendant–Appellant.**

**No. 01–5581.**

United States Court of Appeals, Sixth Circuit.

Aug. 15, 2002.

**360**

Before SUHRHEINRICH, SILER and GILMAN, Circuit Judges.

PER CURIAM.

Appellant Melanie Miller appeals from the judgment of conviction and sentence imposed on one count of fraudulent use of an access device, in violation 18 U.S.C. § 1029(a)(5). She contends that the district court erred in imposing an enhancement for obstruction of justice and in denying a reduction for acceptance of responsibility. For the following reasons, we **AFFIRM**.

## I.

In July 1999, the Navy Personnel Command at Millington, Tennessee conducted a fiscal oversight review of the Navy Memphis Flying Club and found numerous discrepancies. Miller, then the manager of the Flying Club, admitted to the Naval Criminal Investigative Services that she used two government credit cards assigned to the Flying Club for personal expenditures, but denied that she had embezzled funds. A naval audit of the Flying Club's financial records uncovered Miller's repeated misuse of the Flying Club's funds.

The Navy audit also revealed that on February 22, 1999, the People's National Bank of Millington, Tennessee issued a signature loan of $8,550.00 to Miller in the name of the Navy Memphis Flying Club. The stated purpose of the loan was to construct and repair the roof at the Flying Club. Miller, however, applied for and received the loan without consulting with the members or the Board of Directors. The Navy audit revealed that only $1,102 of the loan money was actually used for roof repairs and that the remainder was deposited into the Navy Memphis Flying Club's account and used to cover up Miller's other fraudulent activities.

Miller was indicted on two counts. Count I charged her with knowingly making a false statement to People's National Bank for the purpose of influencing the

bank's actions with the application for a loan, in violation of 28 U.S.C. § 1014. Count II charged Miller with fraudulent use of access devices issued to the Memphis Flying Club, in violation of 18 U.S.C. § 1029(a)(5). She pleaded guilty to Count II on August 28, 2000, and the district court entered an order accepting the guilty plea on September 12, 2000.

The probation office issued the presentence report on September 28, 2000. The presentence report recommended a two-point reduction for acceptance of responsibility and no enhancement for obstruction of justice. On October 2, 2000, the Government indicated that it had no objections to the facts contained in the presentence report, but wished to reserve its position on acceptance of responsibility and obstruction of justice until the defendant set forth her position on relevant conduct. On November 1, 2000, the probation office issued its first addendum to the presentence report. On December 4, 2000, Miller filed her response to the presentence report. She objected primarily to the offense conduct and relevant conduct sections of the report. The probation office filed a second addendum in response. On February 21, 2001, the Government advised the probation office that it considered Miller's objections to be "an attempt to frivolously contest relevant conduct," and requested that Miller be denied the two-level reduction for acceptance of responsibility. On February 22, 2001, the probation officer filed a third addendum. After responding to the individual objections, the probation officer agreed that "the defendant is now frivolously contesting relevant conduct" and that she should not receive the acceptance of responsibility reduction.

On February 28, 2001, Miller filed a second supplemental response to the pre-sentence report. It included the following objection:

Ms. Miller objects to the characterization of her attempts to gain a clear record as to how much she used of Navy Flying Club funds for her own personal use as "frivolous." She is fully aware that she did wrong, and that her inability to keep accurate records has exacerbated the problem. She intends to continue to cooperate fully with the United States in ascertaining the exact amount she owes to the United States, both for sentencing purposes and for restitution purposes.

On March 2, 2001, the district court held a sentencing hearing regarding the amount of loss suffered and the amount of restitution due. Miller testified regarding several of the issues raised in her objections to the presentence report. On direct examination, Miller stated that she began working at the Navy Flying Club sometime between 1997 and 1998. She characterized her bookkeeping abilities as "lousy." Miller reviewed the Government's summary of the various amounts for which she was accountable. Miller testified that she knew she owed $5,042.95, but was unsure whether she owed on several other entries because there were no receipts for some of the charges. She did acknowledge, however, that she might possibly be responsible for the full amount. She also stated that she was "absolutely" guilty of "having taken the money."

Next, Miller testified about the loan. She initially stated that she spoke with David Restor of Maintenance Plus, who provided her with an estimate on the roof repair. She stated that Don Litton of the Public Works Department had been trying to get the Navy to fix the roof for years but was unsuccessful. She then stated that: "I went ahead and applied for the loan because I spoke to Michael Lillo, a

couple other people on the board in passing. It was not a sit-down formal meeting, no. And we got the loan and began work." Later, on cross-examination, Miller admitted that she did not have permission from the board or that of any officer to secure the loan for the roof repair. She stated: "I spoke to the treasurer about it, yes, but I don't believe I had permission to do it as such. I don't think I asked for permission to do it." When asked by the Government whether she asked anybody for permission, she stated: "No, I discussed it. I did not ask for permission. I did not know I needed permission as the manager."

Miller also testified that leftover money from the loan repairs was used to pay the Flying Club's outstanding debts. Miller further stated that she deposited checks numbered 11403 and 11404, which had been issued on the contract pilots for the Club, into the Club's account. Finally, she indicated that she purchased money orders with her own funds to pay the Club's debts because there was not enough money in the Club's account to pay for them.

The Government introduced contrary evidence. Special Agent Rick Yell refuted Miller's testimony that David Restor knew of the loan. Yell also indicated that Miller told the president of the Club, Sam Robinson, that the roof could be repaired with existing funds.

Daniel Cejka, the auditor of the Club's accounts, also testified. He stated that the loan deposit concealed the misuse of the Club's funds because it was presented as revenue rather than a loan, which would have been placed in accounts payable. The records introduced through Cejka also failed to reveal the deposits Miller claims she made into the accounts. Finally, Alicia Mrozowksi, the second auditor, testified that there were no records of any money order payments.

At the conclusion of this hearing, the Government not only requested that Miller be denied a credit for acceptance of responsibility, it also asked that Miller's sentence be enhanced two additional levels for obstruction of justice. The district court reset the matter in order to receive a copy of the transcript and to allow briefing on the issue.

In supplemental briefing, the Government asserted that Miller made material misstatements under oath. Specifically, the Government alleged that Miller lied on two occasions when she stated that she spoke to Michael Lillo and other members of the board regarding the loan. Second, it pointed out that Miller claimed that the money left over from the roof repairs paid off the Club's outstanding debts. However, according to the auditor, the leftover money was used to mask Miller's misuse of funds. Third, the Government observed that, although Miller claimed that she deposited the amounts from checks 11403 and 11404 in the Flying Club's account, the auditor testified that there were no corresponding deposits demonstrating that she in fact did so. Fourth, the Government claimed that Miller falsely testified that she purchased money orders to pay the Club's debts. Fifth, the Government challenged Miller's statement that David Restor was aware of the loan.

The district court reconvened the sentencing hearing on April 6, 2001. The district court denied the acceptance of responsibility reduction and imposed an enhancement for obstruction of justice. The court stated: "The bottom line on this is really that even if I agreed with the defendant's position concerning acceptance of responsibility and obstruction of justice, the very nicest thing we can say about this is that we have somebody who is still fudging it, who is still trying to manipulate the system." The court acknowledged Miller's right to contest the Government's figures, but stated that Miller was not

entitled at the same time to "be less than entirely candid, fudge, confuse." The court again characterized Miller "as attempting to create chaos" both in her bookkeeping and on the witness stand.

Regarding acceptance of responsibility, the district court made the following findings. It found that Miller frivolously contested relevant conduct by testifying about her authorization to obtain the bank loan alleged in Count I of the indictment. The district court stated that this behavior alone was a sufficient basis to deny acceptance of responsibility. The court also held that Miller obstructed justice because she gave false testimony at the March 2 sentencing hearing, that the testimony was material, and that it was calculated to influence the court as to the amount of loss and restitution that might be ordered.

Miller appeals.

## II.

### A.

First, Miller argues that the district court abused its discretion in enhancing her sentence for obstruction of justice pursuant to U.S.S.G. § 3C1.1. We must "accept the findings of fact of the district court unless they are clearly erroneous and ... give due deference to the district court's application of the guidelines to the facts." 18 U.S.C. § 3742(e). After *Buford v. United States*, 532 U.S. 59, 121 S.Ct. 1276, 149 L.Ed.2d 197 (2001), we are re-

quired to give appropriate deference to the district court's sentencing decisions under § 3C.1.1 by applying the clear error standard to the lower court's application of the guidelines to the facts "where the sole issue before the district court is a fact-bound application of the guideline provisions." *United States v. Jackson–Randolph*, 282 F.3d 369, 390 (6th Cir.2002).

Under U.S.S.G. § 3C.1.1, the sentencing court is required to increase the defendant's sentence by two levels if "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense." False testimony at a sentencing hearing qualifies as obstructive conduct under this statute. *See* U.S.S.G. § 3C.1.1, cmt. n. 4(b) (1998) ("committing suborning, or attempting to suborn perjury"); and cmt. n. 4(f) (1998) ("providing materially false information to a judge or magistrate").[1] "Material" evidence, statement, or information, "means evidence, fact, statement or information that, if believed, would tend to influence or affect the issue under determination." *Id.*, cmt. n. 6.

First, Miller takes issue with the district court's finding that she lied about whether she received permission to obtain the loan. She claims that her statement on cross-examination that she spoke to the treasurer but did not actually receive permission is not inconsistent with her earlier

---

1. In *United States v. Sassanelli*, 118 F.3d 495 (6th Cir.1997), this Court held that in order to increase the defendant's sentence because of perjury, the sentencing court must identify those portions of the defendant's testimony it finds perjurious, and make a fact finding that includes all of the factual predicates for a finding of perjury. *Id.* at 501. In *United States v. Dunnigan*, 507 U.S. 87, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993), the Supreme Court held that the factual predicates for perjury include false testimony, concerning a material matter, and that is willful, rather than

the result of confusion, mistake or faulty memory. *Id.* at 94. The question of whether the sentencing court made the findings required by *Dunnigan* and *Sassanelli* is a question of law reviewed de novo. *United States v. Haas*, 35 Fed.Appx. 149, No. 00–5956, 2002 WL 818309, at * 5 (6th Cir. Apr.29, 2002). Miller's challenge is solely to the district court's factual findings. In any event, we note that the district court clearly made findings of materiality and willfulness in addition to identifying those statements it found to be false.

statement that she spoke to people in passing but did not engage in a formal sit-down meeting. She explains the inconsistency as merely a chronological description of the events as they took place.

This explanation lacks credibility. The district court did not clearly err in finding that Miller lied. As the court stated: "The proof was overwhelming that she was not authorized to obtain the loan. Agent Yell's testimony coupled with the defendant's own admission established that."

Next, Miller contends that the Government failed to meet its burden of establishing that her statements regarding the purchase of money orders from her own account to pay outstanding debts of the Club were false. Miller avers that although she was unable to substantiate her claims of repayment, her statements about the money orders were uncontradicted by the records.

The district court's finding that Miller's statement concerning the purchase of money orders was false is not clearly erroneous. The court's observation that "[t]hat is not in any way supported by the records, nor is it in keeping with her normal practice," is consistent with auditor Mrozowski's testimony that there were no records of any payments that had been made to any vendors through money orders, that is, no invoices with copies of the money orders attached. Again, Miller confuses the issue by asserting that the Government failed to meet its burden. The Government established through Mrozowski that the Club's records had no account of vendors being paid by money orders. And as the court suggested, under the normal course of procedure, any invoices would have reflected payment. Rather, since the Government did prove what was not in the books, and Miller failed to provide any proof to support her assertion to the contrary, the district court's finding was not clearly erroneous.

Third, Miller claims that the auditor Cejka's statements that the leftover funds from the loan were used to mask Miller's fraudulent activity in no way contradict her own testimony. Miller alleges that Cejka simply stated the obvious that the Club's insolvency was not evident in February due to the deposit of the leftover loan proceeds into the revenue account, and that she conceded that the funds were entered into the revenue account and she "assumed" they would probably be used. Again, Miller's "explanation" is totally unconvincing, and we conclude that the district court's finding was not clearly erroneous. Indeed, like the district court, we think that Miller is attempting to create chaos on appeal too.

**B.**

Next, Miller claims that the district court erred in denying her a reduction for acceptance of responsibility under U.S.S.G. § 3E.1. A district court's determination of whether a defendant has accepted responsibility is a factual question, and should be accorded great deference and should not be disturbed unless clearly erroneous. *See Buford, supra; United States v. Chambers,* 195 F.3d 274, 278 (6th Cir.1999).

■ The district court held that Miller was not entitled to a reduction for acceptance of responsibility because "she contested relevant conduct through her testimony about whether or not . . . she was authorized to obtain the loan." This in itself is a sufficient basis for denying the reduction. *See* U.S.S.G. § 3E1.1, cmt. n. 1(a) (stating that "a defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility").

As a separate basis for denying the reduction, the district court ruled that because the obstruction of justice en-

hancement was given, an acceptance of responsibility enhancement was inappropriate. This Court has repeatedly held that where an offense level has been increased for obstruction of justice, a reduction for acceptance of responsibility is appropriate only in the most extraordinary case. *See, e.g., United States v. Wilson,* 197 F.3d 782, 786–87 (6th Cir. 1999); *United States v. Mahaffey,* 53 F.3d 128, 134 (6th Cir.1995); *see also* U.S.S.G. § 3C1.1, cmt. n. 5 (1998) (stating that "[s]ome types of conduct ordinarily do not warrant application of this adjustment but may ... affect the determination of whether other guideline adjustments apply (*e.g.* § 3E1.1...)"). This is not one of those cases.

### III.

In sum, the judgment of the district court is **AFFIRMED.**