NOT RECOMMENDED FOR PUBLICATION
File Name: 05a0592n.06
Filed: July 12, 2005

No. 04-3422

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR THE |
| | ) | SOUTHERN DISTRICT OF OHIO |
| IVAN J. SMITH, | ) | |
| | ) | |
| Defendant-Appellant. | ) | OPINION |
| | ) | |

**Before: BOGGS, Chief Judge; GILMAN, Circuit Judge; and CLELAND, District Judge.**[*]

**RONALD LEE GILMAN, CIRCUIT JUDGE.** Ivan J. Smith was arrested by undercover police officers in June of 2001 when he attempted to regain possession of his lost gym bag that contained powder cocaine. A month later, Smith was arrested again after he was shot in the arm by an unknown assailant, and the police investigating the crime discovered crack cocaine in his car and powder cocaine in a nearby garbage dumpster. Smith was thereafter indicted and convicted of attempted possession of more than 500 grams of powder cocaine with the intent to distribute, and of actual possession of more than 500 grams of powder cocaine and more than 5 grams of crack cocaine with the intent to distribute. The district court sentenced Smith to 200 months in prison.

On appeal, Smith argues that the district court (1) erred in failing to sever and try separately the counts in the indictment relating to the two incidents, (2) erred in concluding that there was

_____

[*]The Honorable Robert H. Cleland, United States District Judge for the Eastern District of Michigan, sitting by designation.

sufficient evidence to support the jury's guilty verdict, (3) erred in admitting the prejudicial testimony of two witnesses pursuant to Rule 404(b) of the Federal Rules of Evidence, and (4) violated Smith's Sixth Amendment rights by enhancing his sentence based upon judge-found facts. For the reasons set forth below, we **AFFIRM** Smith's conviction, but **VACATE** his sentence and **REMAND** the case to the district court for resentencing in light of *United States v. Booker*, 125 S. Ct. 738 (2005).

## I. BACKGROUND

### A. The gym-bag incident

An off-duty Columbus police officer was walking home in June of 2001, after dropping his car off for repairs, when he came across a gym bag partially hidden in the grass by the side of the road. Suspecting that the bag had either been lost or stolen, the officer took the bag home to determine if it contained anything that could be used to identify the bag's rightful owner. In inventorying the bag before taking it to the police property room, the officer discovered that, in addition to gym clothes and personal papers, the bag contained two bricks of a white substance that he suspected was crack cocaine. (It later turned out to be 1,636 grams of powder cocaine.)

The bag was turned over to the police department's narcotics unit following the discovery of the drugs. There were several papers in the bag that listed Smith's name, address, and telephone number. The officers decided that Smith was the probable owner of the bag and attempted to contact him. One of the officers called Smith on an undercover cellular telephone and pretended to be someone who had found the bag and who was now seeking a reward for returning it to the owner.

Several telephone calls ensued between the undercover officer and a man identifying himself as Smith. These phone calls were recorded by the police. (Smith later admitted that it was his voice on some of these calls, but denied that it was his voice on other calls.) At no point did the officer tell Smith that there was cocaine in the bag, but he did repeatedly state that he had Smith's "bag with things in there that I didn't want in my house."

Smith and the undercover police officer agreed to meet shortly after midnight in a Wal-Mart parking lot to exchange the gym bag and the reward money. As had been arranged, the officer placed the bag in a shopping cart next to a light pole in the parking lot and returned to his car. A van then pulled up and a female passenger got out and picked up the bag. Before the woman could return to the van with the bag, the police arrested her and the man driving the van. These two turned out to be Smith's niece and nephew. The van they were driving was registered to Creola Puryear, the mother of two of Smith's children.

During the gym-bag exchange and subsequent takedown, the police observed another car in the parking lot, the driver of which was acting suspiciously. The driver was hunched over in his seat monitoring the scene and was speaking on a cellular telephone. He was arrested, and the police subsequently identified him as Smith. The car he was driving was also registered to Creola Puryear. Phone records later revealed that Smith had been speaking on his cellular telephone to his nephew, the driver of the van involved in the gym-bag exchange.

As a result of the gym-bag incident, Smith was indicted for attempted possession of more than 500 grams of cocaine with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(ii). He testified at trial that the bag was stolen from him at a basketball game two weeks

before and that he was anxious to recover it because it contained heirloom jewelry. According to

Smith, there was no cocaine in the bag when it was stolen. But, following a seven-day trial on this

charge and charges related to the following incident, the jury obviously disbelieved Smith and found

him guilty on this charge.

**B.     The carjacking incident**

In July of 2001, Smith was traveling in his car with a second nephew when he was allegedly

the victim of an attempted carjacking. (Much of this account is drawn from Smith's own testimony,

which was not corroborated by other witnesses.) Smith said that he was driving through an

unfamiliar part of town when he was forced to stop because several cars were parked in the middle

of the street ahead of him. When Smith stopped his car, "some guys" came running up and one of

them had a gun. The man stuck the gun through the passenger-side window and held it up to the

head of Smith's nephew, telling him to get out of the car.

After Smith's nephew had fled, the gunman walked around and opened Smith's door,

ordering him out of the vehicle. At this point Smith noticed that the gunman was carrying

something in his other hand. One of the men accompanying the gunman opened the car door and

climbed into the back seat of Smith's vehicle. This man punched Smith in the back of the head and

demanded that he take off his jewelry before getting out of the car. Smith removed his jewelry and

attempted to get out of the car, but forgot that he was wearing his seatbelt. When he reached down

to unbuckle it, the man with the gun shot Smith in the right arm.

Smith reacted to being shot by stomping down on his car's gas pedal. He then made a sharp

turn, which caused the two carjackers to fly out of the car. The gunman fired at least one more shot

at Smith's car as he drove away. After this, Smith's memory gets hazy. He remembers nothing more of what happened until he was in an ambulance on his way to the hospital.

Following the shooting, Smith's car traveled several blocks and made two turns before crashing into a fence behind the home of Donald Davis. Davis went up to the car and saw Smith "sitting at the steering wheel with his arm in real bad shape and blood everywhere." When Davis told Smith that he was calling 911, Smith responded by saying that he "had to get out of there." Davis left to go call for help. When he returned to Smith's car, Smith was gone. Looking around, Davis saw Smith walking down a nearby alley. Davis testified at trial that he had not seen Smith carrying anything, but two police officers on the scene that night had in their notes that Davis told them that he had seen Smith carrying something as Smith walked down the alley.

When the paramedics arrived, they found Smith, badly hurt but conscious, lying several hundred feet down the alley. He told the paramedics that he had been carjacked. Smith was taken to the hospital in serious condition with a gunshot wound to his right arm. At the hospital, marijuana was found in his clothing.

The police arrived on the scene shortly after the paramedics and immediately secured the area around the car, including the alley where Smith was found. They followed Smith's steps from the car down the alley. This led them past a garbage dumpster in the alley between the crashed car and where Smith had been lying. When they opened the dumpster, the officers found a shoe box with blood on its lid sitting atop the garbage. Inside the shoe box there was white powder and $12,390 in cash.

After obtaining a search warrant, the police searched Smith's car and found more white powder on the floor in the front passenger area. They also found a bag containing a white substance and a bottle of pills with Smith's name on them in the built-in pocket behind the driver's seat. The shoe box and the white powder inside it, the white powder from the floor of the car, and the bag from behind Smith's seat were all sent to a laboratory for analysis. Testing revealed that the 505.1 grams of white powder in the shoe box consisted of a detectible amount of less than one percent cocaine. The remaining powder in the shoe box and the white powder from the floor of the car were only a cutting agent and contained no measurable cocaine. But the white substance found in the pocket behind Smith's seat contained 46.9 grams of crack cocaine. The blood found on the lid of the shoe box matched the blood sample taken from Smith.

As a result of the discovery of the drugs in Smith's car and in the dumpster, Smith was indicted for possession of more than 500 grams of powder cocaine and more than 5 grams of crack cocaine with the intent to distribute, all in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(ii)-(iii). At trial, Smith denied that he possessed any drugs. He offered the alternative theory that the drugs were left in his car by the men who attempted to carjack him. Smith emphasized that these men have not been apprehended. The jury, however, again disbelieved Smith and found him guilty on both counts relating to the car-jacking incident.

Smith's sentence was enhanced for obstruction of justice after the district court found that he had testified falsely at trial. Without this enhancement, Smith's sentencing range would have been 151 to 188 months of imprisonment, but after the enhancement, his range was 188 to 235 months. The district court sentenced Smith to 200 months in prison. This timely appeal followed.

## II.  ANALYSIS

**A.      The district court did not err in failing to sever the counts in the indictment relating to the two different incidents**

On appeal, Smith contends that he should have received two different trials regarding the charges stemming from the gym-bag incident and the carjacking incident, and that the joinder of the two offenses deprived him of a fair trial.  Rule 14(a) of the Federal Rules of Criminal Procedure permits the court to sever joined offenses where "consolidation for trial appears to prejudice a defendant."  But Rule 12(b)(3)(D) of the Criminal Rules requires that a defendant make a Rule 14(a) motion for severance before the trial begins or else the objection is waived.  *United States v. Rox*, 692 F.2d 453, 454 (6th Cir. 1982) ("A defendant must move for severance based on misjoinder before trial or waive the objection.") (applying Rule 12(b)(5) of the Federal Rules of Criminal Procedure, an earlier version of Rule 12(b)(3)(D)).

The record reveals that Smith's counsel failed to make a Rule 14(a) motion prior to trial.  Smith argues on appeal, however, that his counsel should have requested two different trials regarding the allegations of drug possession.  Although this failure may be grounds for a post-conviction claim alleging the ineffective assistance of counsel, it cannot revive Smith's Rule 14(a) misjoinder objection on direct appeal.  *See United States v. Stacy*, No. 93-6204, 1995 WL 150330, at *2 (6th Cir. Apr. 5, 1995) (unpublished) (directing the defendant, who alleged that his attorney was ineffective for failing to move for severance, to raise the claim in a post-conviction proceeding).

Moreover, even if Smith had raised his objection in a timely manner, his claim would have been without merit.  Rule 14(a) requires that the counts in an indictment be severed only when the

defendant demonstrates that he will be prejudiced by the joinder of the charges. *See Rox*, 692 F.2d at 454 ("A defendant is prejudiced if the jury would be unable to keep the evidence from each offense separate and unable to render a fair and impartial verdict on each offense."). The defendant bears the burden of demonstrating prejudice, a burden that Smith has not satisfied. *See United States v. Bowker*, 372 F.3d 365, 385 (6th Cir. 2004) (holding that "non-specific assertions of prejudice are insufficient to warrant severance under Rule 14") (vacated on other grounds). We therefore conclude that the district court did not err in failing to sever the counts resulting from the gym-bag incident and the carjacking incident.

**B.     The evidence was sufficient to support the jury's finding that Smith was guilty on all three counts of the indictment**

Smith contends that the evidence presented at trial was insufficient to support the jury's determination that he knowingly attempted to possess more than 500 grams of powder cocaine with the intent to distribute and knowingly possessed more than 500 grams of powder cocaine and more than 5 grams of crack cocaine with the intent to distribute. On this basis, he argues that the district court erred in denying his motion for acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure.

In evaluating a claim that a guilty verdict was against the weight of the evidence, we must "view the evidence in the light most favorable to the government and . . . affirm the jury's verdict unless no rational trier of fact could have found, beyond a reasonable doubt, that [Smith] committed the offenses charged." *United States v. Morrow*, 977 F.2d 222, 230 (6th Cir. 1992) (en banc) ("Our review of the sufficiency of the evidence is quite limited.").

### 1.    *The gym-bag incident*

Smith was convicted of violating 21 U.S.C. § 841(a)(1), which makes it "unlawful for any person knowingly or intentionally . . . to . . . possess with intent to . . . dispense[] a controlled substance." At trial, the government bore the burden of establishing beyond a reasonable doubt that Smith acted with the requisite state of mind; i.e., that he acted knowingly. Smith contends that the government failed to meet its burden because it did not establish that there was cocaine in the gym bag when the bag was allegedly stolen from him. Because there was no direct evidence that Smith knew that the bag contained cocaine when he attempted to retrieve it, Smith contends that the government cannot prove that he knowingly attempted to possess cocaine.

Smith correctly observes that there was no evidence presented at trial to suggest how the gym bag ended up beside the road where it was found by the police. This point would have persuasive force except for the fact that the government introduced sufficient circumstantial evidence upon which the jury could base its finding that Smith knew that the gym bag contained cocaine when he attempted to recover it. *See Desert Palace Inc. v. Costa*, 539 U.S. 90, 100 (2003) ("[W]e have never questioned the sufficiency of circumstantial evidence in support of a criminal conviction, even though proof beyond a reasonable doubt is required.").

Smith, for example, never reported to the police or to his insurance company that the bag was stolen, even though he claimed that it contained valuable heirloom jewelry. He arranged to meet an unknown person late at night in a Wal-Mart parking lot to recover the bag. When the person who was in possession of the bag hinted that it contained contraband, stating that it had "things in there that I didn't want in my house," Smith did not inquire further. Instead, he arranged to have his niece

and nephew retrieve the bag while he sat a safe distance away monitoring the exchange. All of these suspicious circumstances are inconsistent with Smith's alleged lack of knowledge regarding the contents of the bag.

Smith, in an attempt to rebut the government's evidence, offered testimony that his gym bag had been stolen two weeks before at a basketball game. He suggested that either the person who stole the bag or the police who found the bag had planted the cocaine, and that he had no knowledge that the bag contained drugs when he arranged to recover it. The fact that Smith offered an alternative explanation, however, does not compel a finding that the jury's verdict was unsupported by the evidence. *See United States v. Schreane*, 331 F.3d 548, 562 (6th Cir. 2003) ("It is well settled that when a defendant offers an innocent explanation for the incriminating facts proved by the government, the jury is free to disbelieve it.") (citation and quotation marks omitted).

### 2.       *The carjacking incident*

The same is true with respect to Smith's claims concerning the alleged carjacking incident. When homeowner Donald Davis told Smith that he was calling 911, Smith responded by saying that he "had to get out of there." Smith then fled the scene and was found in an alley a couple of hundred yards away. His blood was found on the lid of the shoe box containing the cocaine mixture. The police found the shoe box in a garbage dumpster near where Smith had collapsed. Although Smith maintains that the carjackers left the shoe box in his car, he has offered no explanation for how the shoe box ended up in the dumpster with his blood on the lid. In light of the powerful circumstantial evidence presented by the government, there is no doubt that a "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *See Jackson v. Virginia*, 443

U.S. 307, 319 (1979); *see also United States v. Copeland*, 321 F.3d 582, 600 (6th Cir. 2003) (holding that "[c]ircumstantial evidence by itself can support a defendant's conviction").

Smith also argues that the evidence presented at trial was insufficient to support his conviction for possession with intent to distribute the 46.9 grams of crack cocaine that was found in the pocket behind his driver's seat. He properly points out that simple "[p]hysical proximity to drugs, or mere presence in an area where drugs are found, is not sufficient." *United States v. White*, 932 F.2d 588, 589 (6th Cir. 1991). But the government demonstrated that Smith had constructive possession of the crack cocaine because he had "ownership, dominion, or control" over the car in which it was found. *See id.* ("To establish constructive possession, the evidence must indicate ownership, dominion, or control over the contraband itself or the premises or vehicle in which the contraband is concealed.") (citations and quotation marks omitted). The additional evidence presented at trial with regard to Smith's possession of the cocaine mixture in the shoe box and his attempted possession of the cocaine in the gym bag lends further support to the jury's guilty verdict on this count.

Finally, Smith argues that the district court erred in permitting the jury to treat the entire quantity of white powder found in the shoe box, 505.1 grams, as cocaine. Because the total purity of the mixture was less than one percent, Smith insists that it was improper for the jury to convict him on a count alleging that he possessed more than 500 grams of cocaine. This argument is totally foreclosed, however, because the statute that Smith was convicted of violating, 21 U.S.C. § 841(b)(1)(B)(ii)(II), unambiguously prohibits possession of "500 grams or more of a mixture or substance containing a *detectable amount* of . . . cocaine." (Emphasis added.) The Drug

Enforcement Agency analyst who tested the composition of the white powder confirmed that it contained enough cocaine to be detectable, albeit in only a small quantity. Because this contention and Smith's other arguments regarding the sufficiency of the evidence are without merit, we conclude that the evidence was sufficient to support the jury's verdict on all three counts of the indictment.

**C.      The district court did not err in admitting the testimony of two witnesses who said that they had engaged in drug dealings with Smith in the past**

Smith argues that the district court improperly admitted prejudicial "other acts" evidence, thereby depriving him of a fair trial. In an effort to prove that Smith had the specific intent to distribute the drugs that he was accused of possessing, the government offered testimony from two of Smith's associates who claimed to have engaged in drug deals with Smith in the past. The district court admitted this testimony pursuant to Rule 404(b) of the Federal Rules of Evidence, which states that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, [or] knowledge . . . ."

James Jeffrey Brown testified that he had sold Smith cocaine on two different occasions in quantities not normally purchased for individual use. Brown also testified that Smith had tried to sell him cocaine on several occasions, but, because Brown had his own supplier, he had never purchased cocaine from Smith. Smith admitted under cross examination that he had purchased cocaine from Brown in the past. Another acquaintance of Smith's, Jason Frank, testified that on two

prior occasions he had purchased cocaine from Smith. Smith, however, denied having ever sold cocaine to Frank.

Smith argues that the district court erred in admitting the testimony of these two witnesses because it was extremely prejudicial to his case and because the government had other evidence that it could have relied upon to prove his alleged intent to distribute the drugs. He claims that the government's real motivation for admitting the evidence was to bolster its case by impermissibly suggesting that because Smith had previously possessed drugs, he was more likely to have possessed the drugs in the present case. Use of the testimony in this manner by the jury would be "other acts" evidence that is inadmissible under Rule 404(b) of the Federal Rules of Evidence.

Courts in this circuit employ a three-step analysis for determining the admissibility of "other acts" evidence under Rule 404(b). *See United States v. Haywood,* 280 F.3d 715, 719-20 (6th Cir. 2002). The first step requires the district court to decide whether there is sufficient evidence that the other act in question actually occurred. *Id.* at 720. If so, the court is then required to decide whether the evidence of the other act is "probative of a material issue other than character." *Id.* (citation omitted). Finally, if the district court determines that the evidence is probative of a material issue other than character, the court is required to decide whether the probative value of the evidence is substantially outweighed by its potential prejudicial effect. *Id.*

The district court in the present case made specific findings with respect to the last two steps, but not the first. We need not address this failure, however, because Smith has not argued on appeal that the drug transactions with the two witnesses did not actually occur. *See United States v. Hardy*, 228 F.3d 745, 750 (6th Cir. 2000) (holding that even where "the record does not reflect [that] the

district court made the required factual finding [that] the other bad acts occurred," reversal was not required because the defendant "did not dispute this fact at trial, nor d[id] he do so on appeal").

The district court correctly concluded that the second step of the test was met because the testimony of the two witnesses—that Smith had bought and sold drugs in the past—was probative as to whether Smith intended to distribute the drugs that he was accused of possessing in the present case. *See United States v. Spikes*, 158 F.3d 913, 930 (6th Cir. 1998) ("Rule 404(b) evidence is admissible to prove intent if specific intent is a statutory element of the offense. Possession with intent to distribute is such an offense.") (citation omitted).

The third and final step in the test for the admission of Rule 404(b) evidence requires the district court to determine whether the evidence of the other acts is unduly prejudicial to the defendant. *Haywood,* 280 F.3d at 723. In making this determination, courts often consider the nature of the district court's limiting instruction, the temporal proximity of the other acts to the crime at issue, and the availability of other, less prejudicial evidence. *See, e.g., United States v. Feinman*, 930 F.2d 495, 499 (6th Cir. 1991).

A defendant is less likely to prevail on his claim that evidence of other bad acts unfairly prejudiced him where the limiting instruction given by a district court "correctly focused on intent." *See United States v. Myers*, 123 F.3d 350, 364 (6th Cir. 1997) (approving the admission of testimony regarding the defendant's prior drug transactions where the district court's limiting instruction stated that the evidence could be used only to prove intent to distribute). Following the testimony of both witnesses in the present case, the district court gave a limiting instruction that included the warning that the jury "may consider that evidence only for the purpose of deciding whether . . . it proves the

element of intent to distribute as alleged in the three counts of the indictment." This limiting instruction diminished the possibility that the jury would use the testimony to make impermissible inferences. *See Feinman*, 930 F.2d at 499 (holding that the admission of Rule 404(b) testimony regarding prior drug sales by the defendant was proper where "the district court minimized any possible prejudicial effect by giving a limiting instruction").

The district court's limiting instruction also directed the jury to consider only "the alleged prior acts occurring within two years of the dates of the indictment." Because the drug transactions testified to by Brown and Frank and considered by the jury "were all relatively close in time to the alleged crime so as to not prejudice [Smith] for something that happened in the distant past," the testimony was not unduly prejudicial. *Myers*, 123 F.3d at 363 (admitting the testimony of three witnesses who said that they had purchased drugs from the defendant three years prior to the alleged crime).

Smith maintains, however, that the government should have relied solely on the evidence that he possessed large quantities of drugs in order to prove his intent to distribute the cocaine. But the evidence of quantity alone may have been insufficient to support the jury's guilty verdict. This was not a case where police officers arrested Smith in the midst of a drug sale, or where a confidential informant provided inside information regarding Smith's intent to sell the cocaine. Because the Rule 404(b) evidence was one of the few ways for the government to connect the cocaine found in Smith's possession with his intent to distribute it, the district court's admission of this evidence was not unduly prejudicial. *See United States v. Merriweather*, 78 F.3d 1070, 1077 (6th Cir. 1996) ("One factor in balancing unfair prejudice against probative value . . . is the availability of other

means of proof."). Because the testimony of the two witnesses was more probative than it was prejudicial, we conclude that the district court did not err in admitting this evidence pursuant to Rule 404(b).

**D.      The district court violated Smith's Sixth Amendment rights by sentencing him on the basis of judge-found facts under the then-mandatory Sentencing Guidelines**

*1.      Misdemeanor marijuana charge*

Smith argues that the district court erred in including a misdemeanor marijuana offense in his criminal history computation because marijuana possession in Ohio is a virtually decriminalized offense, and because there is no evidence that Smith was represented by counsel in the misdemeanor proceeding. This claim merits little consideration in light of this court's holding in *United States v. Stubblefield*, 265 F.3d 345, 347 (6th Cir. 2001), that "[s]entences for misdemeanors and petty offenses, including uncounseled misdemeanor sentences where imprisonment was not imposed, count when calculating the criminal history category." We are bound by this prior precedent. *See Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985) ("A panel of this Court cannot overrule the [published] decision of another panel. The prior decision remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting en banc overrules the prior decision.").

*2.      Sentencing enhancement for obstruction of justice*

Smith also argues that the district court erred in enhancing his sentence under § 3C1.1 of the United States Sentencing Guidelines for obstruction of justice. This provision of the Sentencing Guidelines directs the district court to increase the defendant's offense level by two levels "[i]f the

defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense or conviction." USSG § 3C1.1 (2002).

Smith correctly states in his brief that *United States v. Sassanelli*, 118 F.3d 495 (6th Cir. 1997), outlines the test for determining whether a sentencing enhancement for obstruction of justice should be applied, but Smith fails to argue how the district court's analysis in the present case fell short of that standard. In *Sassanelli,* this court held that the "district court must make a specific finding that the defendant committed perjury before imposing the enhancement" in order to ensure that the enhancement is not given "if the defendant merely testified untruthfully due to mistake or confusion." *Id.* at 500. The court further mandated that "the sentencing court must identify particular examples of the defendant's untruthful testimony upon which it bases the § 3C1.1 enhancement." *Id.* at 501.

In the present case, the district court made the particularized findings required under *Sassanelli*. The court cited at least four instances of untruthful testimony by Smith, finding that he was not "mistaken or confused." Instead, it found that he was "untruthful with respect to material matters in the case[,] and that the untruthful matters on which the defendant testified were designed to substantially affect the outcome of the case." Only then did the district court "arrive[] at the inescapable conclusion that the defendant committed perjury during trial." The district court, therefore, did not err in concluding that an enhancement for obstruction of justice under § 3C1.1 of the Sentencing Guidelines was appropriate in Smith's case.

### 3. *Sixth Amendment violation*

That Smith obstructed justice by committing perjury, however, is a factual finding that was not submitted to the jury. *See United States v. Alva*, 405 F.3d 383, 385 (6th Cir. 2005) (remanding for resentencing where the district court "concluded that [the defendant] had obstructed justice, . . . a fact neither reflected in the jury verdict nor admitted by [the defendant]"). The district court committed plain error, therefore, in sentencing Smith under the then-mandatory Sentencing Guidelines based upon a judge-found fact. *See United States v. Booker*, 125 S. Ct. 738, 749 (2005); *United States v. Oliver*, 397 F.3d 369, 377-81 (6th Cir. 2005).

Prior to the enhancement, Smith's sentencing range was 151 to 188 months of imprisonment. But after the two-level enhancement, Smith's sentencing range was 188 to 235 months. The district court sentenced him to 200 months, the middle of the enhanced range. Because Smith's sentence was imposed in violation of the Sixth Amendment as determined by *Booker*, we must remand this case for resentencing. *See United States v. Barnett*, 398 F.3d 516 (6th Cir. 2005) (remanding for resentencing where the presumption of prejudice to the defendant was not rebutted).

### III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** Smith's conviction, but **VACATE** his sentence and **REMAND** the case to the district court for resentencing in light of *Booker*.