**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 07a0782n.06
Filed: November 7, 2007

**Nos. 06-2227/2230**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | **ON APPEAL** FROM THE |
| **Plaintiff-Appellee,** | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| v. | ) | DISTRICT OF MICHIGAN |
| | ) | |
| JEREMY PERNELL DRUMMOND, | ) | **O P I N I O N** |
| | ) | |
| **Defendant-Appellant.** | ) | |

BEFORE: NORRIS, GIBBONS, and ROGERS, Circuit Judges.

**ALAN E. NORRIS, Circuit Judge.** A jury convicted defendant Jeremy Drummond on two counts: wire fraud and possession of fifteen or more credit card numbers with the intent to defraud. 18 U.S.C. §§ 1029(a)(3), 1343. He committed these crimes while still on supervised release from an earlier credit card fraud conviction. As a result, his supervised release was revoked and the district court imposed a 24-month sentence for that violation. Defendant appeals that sentence, as well as the more recent conviction and sentence.

On appeal, he contends that there was insufficient evidence for the jury to find him guilty beyond a reasonable doubt; that the district court erred in permitting the government to introduce evidence of his earlier conviction to establish intent and identity; that his sentence was improperly enhanced for obstruction of justice after the district court concluded that defendant testified falsely

at trial; and, finally, that the court erred in sentencing him to 24 months of imprisonment for his violation of supervised release because the guidelines range was between four and ten months.

**I.**

This prosecution arises from an ill-advised flight that defendant and his friend, Alesha Banks, planned to take from Flint, Michigan to New York City on October 14, 2005. The security department of AirTran Airways, the carrier on which the couple planned to fly, flagged the transaction as worth investigating because defendant booked the tickets on-line and paid with a credit card issued in the name of Bob Curlee, a Georgia resident. When contacted, Curlee indicated that he had not booked the flight. Further investigation revealed that defendant had booked rooms on-line at a hotel in New York for three days using another card in someone else's name. Once again, the cardholders, residents of Virginia, knew nothing of the transaction.

At the airport, defendant and Banks checked three bags before proceeding to the gate. Thereafter, they were paged to return to the ticket counter based upon an alert from AirTran security. Ticket agent Laurin Malone reviewed their identification and asked the pair to wait at the counter while she spoke to a supervisor who instructed Malone to photocopy the identification. Accordingly, Malone asked for their identification a second time after she returned to the counter. Defendant touched Banks' hand to stop her from offering her license and the couple backed toward the door before leaving the airport without attempting to retrieve their luggage.

Malone contacted the airport police. An airport employee watched defendant and Banks walk to a service station approximately one-half mile from the terminal. Officer John Poisson arrested them there shortly thereafter. When arrested, defendant had a wallet in his left rear pocket

that contained two sheets of paper with credit card numbers, names, and banks listed on them. According to Poisson, defendant volunteered, "They're just numbers." James Compton, a computer expert, testified at trial that the numbers could potentially be used to purchase items.

Over the objection of defense counsel, the district court permitted testimony regarding defendant's earlier conviction for credit card fraud. In July 2001, a company named Data Capture Consultants set up an account for a client, A & B Gefilte Fish in Monsey, New York. Before A & B began to use the account, however, over $52,000 in funds were illegally transferred to defendant's checking account, MasterCard credit account, and the MasterCard account of his uncle. Secret Service Agent Mike Wichar interviewed defendant, who claimed that the transfers were due to his participation in an internet chat room. However, a search of his computer revealed 13,633 credit card numbers, which defendant had attempted to delete. Case reports of the earlier conviction were introduced at trial along with a diagram summarizing the scam. The jury was also told that defendant pleaded guilty.

The district court provided a limiting instruction, however, both at the time the prior act evidence was introduced and before deliberations began. Among other things, the court noted, "[Y]ou can consider the evidence only as it relates to the Government's claim on the defendant's intent and identity. You must not consider it for any other purpose."

The jury convicted defendant on both counts of the superseding indictment. As discussed in more detail below, defendant was sentenced to concurrent 14-month terms of imprisonment on each count of the indictment, to be served consecutively to the 24-month sentence imposed for the violation of his supervised release.

**II.**

*1. Sufficiency of the Evidence*

This court recently reiterated its long-standing approach to challenges to the sufficiency of

the evidence:

> A defendant challenging the sufficiency of the evidence has a "very heavy burden." *United States v. Chavis*, 296 F.3d 450, 455 (6th Cir. 2002). When reviewing an insufficient-evidence claim, this court must decide whether, after viewing the evidence in a light most favorable to the government, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *United States v. Humphrey*, 279 F.3d 372, 378 (6th Cir. 2002); *United States v. Gibbs*, 182 F.3d 408, 421 (6th Cir. 1999). *See also Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979).
>
> When deciding whether any rational trier of fact could have found the essential elements of the crime, this court does not "weigh the evidence, consider the credibility of witnesses, or substitute its judgment for that of the jury." *Chavis*, 296 F.3d at 455 (quoting *United States v. Ferguson*, 23 F.3d 135, 140 (6th Cir. 1994)). A judgment is reversed on insufficiency-of-the-evidence grounds "only if [the] judgment is not supported by substantial and competent evidence upon the record as a whole." *United States v. Barnett*, 398 F.3d 516, 522 (6th Cir. 2005); *United States v. Beddow*, 957 F.2d 1330, 1334 (6th Cir. 1992).

*United States v. Gardner*, 488 F.3d 700, 710 (6th Cir. 2007).

Defendant contends that the evidence produced against him was constitutionally insufficient

with respect to a single element of each offense. Turning first to the wire fraud conviction,[1]

---

[1] This section provides as follows:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both. If the violation affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

defendant maintains that the government failed to prove that "wire communications" were used in furtherance of the crime. Sherry Bittner, an AirTran employee who specializes in loss prevention, testified that the reservations at issue were made over the internet using a credit card issued to Bob Curlee. Even though she testified that the internet server was located in Minneapolis and the reservations center was in Atlanta, defendant argues that the witness failed to explain how she knew that the order was "wire based." Not only did she have no personal knowledge of this fact, she was not qualified as an expert.

We note, however, that Ms. Bittner had been in the loss prevention field since 2000 and, during her testimony, introduced internet-generated documents and records which showed how the reservations were ordered. Moreover, defense counsel never suggested that an expert was required nor did he contest the testimony that the tickets were ordered over the internet and involved interstate transmissions.

With respect to the second count, possession of more than fifteen unauthorized access devices,[2] defendant makes a similar argument. He contends that the government failed to prove that

---

18 U.S.C. § 1343.

[2] This section reads in part as follows:

(a) Whoever –

. . . .

(3) knowingly and with intent to defraud possesses fifteen or more devices which are counterfeit or unauthorized access devices;

. . . .

shall, if the offense affects interstate or foreign commerce, be punished as provided in subsection

the credit card numbers found on the pieces of paper in the wallet "affected interstate or foreign commerce," which is an element of the offense.

Computer expert James Compton testified, however, that the twenty-one numbers on the sheets of paper were all valid credit card numbers and that several of them were issued by foreign banks, specifically in Taiwan and the United Kingdom. Secret Service Agent Brian Gibson also testified that the credit card numbers were associated with banks located throughout the United States, such as CitiBank, Chase bank, and Northrop Grumman Federal Credit Union. We note that one of our sister circuits has observed that possession of a counterfeit credit card without use is sufficient to constitute a violation and that the phrase "affect interstate or foreign commerce" was intended by Congress to "establish a broad jurisdictional basis." *United States v. Rushdan*, 870 F.2d 1509, 1513 (9th Cir. 1989) (quoting H.R. Rep. No. 894, 98th Cong. 2d Sess. at 16 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3689, 3702).

After review of the evidence presented during trial, we conclude that defendant's sufficiency of the evidence challenge fails. As explained, the evidence respecting the contested elements of the crimes was sufficient for a "rational juror" to find guilt beyond a reasonable doubt.

## *2. 404(b) Evidence*

Federal Rule of Evidence 404(b) permits the introduction of evidence of other crimes for limited purposes:

---

(c) of this section.

18 U.S.C. § 1029.

**(b) Other Crimes, Wrongs, or Acts.** – Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

Fed. R. Evid. 404(b).   We review a district court's decision to allow the introduction of such evidence as follows:

[W]e first review for clear error the district court's factual determination that the "other . . . acts" occurred. Second, we examine *de novo* the district court's legal determination that the evidence was admissible for a legitimate purpose. Finally, we review for abuse of discretion the district court's determination that the probative value of the other acts evidence is not substantially outweighed by its unfairly prejudicial effect.

*United States v. Merriweather*, 78 F.3d 1070, 1074 (6th Cir. 1996) (citation omitted).

Defendant focuses upon the potential prejudice of his prior conviction.  He contends that the charged crimes were "non-complex" and therefore the extensive evidence introduced about his prior conviction was unnecessary to establish either intent or identity, the two grounds upon which the district court permitted its introduction.  Although defendant does not contend that the district court failed to give the proper limiting instructions, he reminds us that "the likelihood is very great that the jurors will use the [prior acts] evidence precisely for the purpose it may not be considered; to suggest that the defendant is a bad person, a convicted criminal, and that if he 'did it before he probably did it again.'" *United States v. Johnson*, 27 F.3d 1186, 1193 (6th Cir. 1994).

We begin by noting that defendant only objected to the prejudicial effect of the proposed other acts evidence below; he did not argue that it was improperly admitted to show either identity

or intent. In any event, the district court provided the following limiting instructions at the time the

evidence was introduced:

> If you find the defendant did those crimes, acts, or wrongs, you can consider the evidence only as it relates to the Government's claim on the defendant's intent and identity. You must not consider it for any other purpose.
>
> Number two, remember that the defendant is on trial here only for the two counts listed in the first superseding indictment and not for the other acts.

The district court repeated a similar instruction before the jury deliberated.

Because defense counsel argued that defendant's companion made the flight reservations,

the government contends that the other acts evidence was proper to establish identity and intent.

While not precisely the same as the charged crimes, the prior conviction required knowledge of the

internet and wrongful use of credit card information. Particularly, in light of the limiting instructions

given to the jury, we hold that the district court did not abuse its discretion by admitting this

evidence.

## 3. Obstruction of Justice

The district court elected to enhance defendant's base offense level for obstruction of justice.

The guideline provides as follows:

> If (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense, increase the offense level by **2** levels.

U.S.S.G. § 3C1.1. At sentencing, the district court provided this rationale for its decision:

> The defendant took the witness stand, testified and denied that – denied that he was guilty of either of these charges and the jury obviously evaluated his

testimony as being untruthful, further found him guilty. If the jury had believed that – his testimony in that regard, I assume he would have been acquitted. But they didn't, they found him guilty.

The Court heard the testimony. The Court concluded frankly was that if I were on the jury I would have reached the same conclusion. I thought the evidence that was produced here was rather overwhelming against the defendant in this matter. And the only conclusion I could reach is that he testified falsely.

And I think that constitutes obstruction of justice.

The Supreme Court has made clear that not every defendant who testifies and is convicted

is subject to the obstruction enhancement:

[N]ot every accused who testifies at trial and is convicted will incur an enhanced sentence under § 3C1.1 for committing perjury. As we have just observed, an accused may give inaccurate testimony due to confusion, mistake, or faulty memory. In other instances, an accused may testify to matters such as lack of capacity, insanity, duress, or self-defense. Her testimony may be truthful, but the jury may nonetheless find the testimony insufficient to excuse criminal liability or prove lack of intent. For these reasons, if a defendant objects to a sentence enhancement resulting from her trial testimony, a district court must review the evidence and make independent findings necessary to establish a willful impediment to or obstruction of justice, or an attempt to do the same, under the perjury definition we have set out. When doing so, it is preferable for a district court to address each element of the alleged perjury in a separate and clear finding. The district court's determination that enhancement is required is sufficient, however, if, as was the case here, the court makes a finding of an obstruction of, or impediment to, justice that encompasses all of the factual predicates for a finding of perjury.

*United States v. Dunnigan*, 507 U.S. 87, 95 (1993) (citations omitted). This court has parsed

*Dunnigan* in the following manner:

[W]e have clarified our earlier decisions, and set forth our own requirements for sentence enhancement in compliance with the Supreme Court's in *Dunnigan*. In addition to protecting defendants who testify at trial, these requirements provide a meaningful record to determine which statements the district court considered to be perjurious and whether the court found those statements to satisfy each element of perjury. *United States v. Sassanelli*, 118 F.3d 495, 501 (6th Cir. 1997). For a district

court to enhance a defendant's sentence under § 3C1.1, the court must: 1) identify those particular portions of defendant's testimony that it considers to be perjurious; and 2) either make a specific finding for each element of perjury or, at least, make a finding that encompasses all of the factual predicates for a finding of perjury. *United States v. Mise*, 240 F.3d 527, 531 (6th Cir. 2001) (citing *Sassanelli*, 118 F.3d at 501).

As indicated in *Sassanelli*, the second requirement was held by the Supreme Court to be necessary under § 3C1.1. *Sassanelli*, 118 F.3d at 501 (citing *United States v. Spears*, 49 F.3d 1136, 1143 (6th Cir. 1995)). The first of these requirements, however, is a rule of our own creation to assist us in our review of sentence enhancements under § 3C1.1, though we have never insisted on a rigid adherence to its terms. *Id.* Thus, a district court's findings will be adequate if: 1) the record is sufficiently clear to indicate which statements the district court considered perjurious; and 2) the district court found that the statements satisfied each element of perjury. *Id.*

*United States v. Lawrence*, 308 F.3d 623, 632 (6th Cir. 2002).

Defendant takes issue with the district court's lack of specificity with respect to precisely which statements it found to be perjurious, requiring at the very least a remand for further elaboration.

It would have been preferable had the district court given specific findings with respect to which statements it found to be perjurious. However, before the sentencing hearing, the government submitted a motion seeking an enhancement for obstruction of justice. The motion included those statements made by defendant that were contradicted by other testimony at trial and which the jury clearly disbelieved. In the past, we have affirmed an obstruction enhancement based upon assertions made in a sentencing memorandum submitted by the government that were impliedly accepted by the district court. *See, e.g., United States v. Roper*, 135 F.3d 430, 434 (6th Cir. 1998). In addition, we note that defendant's version of events was highly implausible and unsupported by other testimony. Moreover, he did not testify in order to present the kind of defenses outlined by the

Supreme Court in *Dunnigan*; rather, he simply told a different story than the other witnesses. Even though we affirm the enhancement, we continue to require that district courts state with specificity the statements made by defendant that support an enhancement for obstruction of justice. In this instance, however, the overall context makes it clear that the district court relied upon those statements cited by the government and thus a remand is unnecessary.

### 4. Sentence on Revocation of Supervised Release

Defendant's final contention involves the sentence imposed after the revocation of his supervised release. The district court departed upward from the four to ten month guideline range and instead imposed a sentence of 24 months of imprisonment.

On June 28, 2006, the government filed an amended petition that listed four violations of defendant's conditions of supervised release: two involved the commission of new crimes; one charged that defendant left the judicial district without notifying his probation officer; and the fourth charged defendant with using the internet outside of an employment situation. The district court found that he committed these violations. In sentencing defendant to 24 months of imprisonment, the district court looked to the fact that there were four violations of supervised release, that the new crimes were committed only nine days after defendant's release from confinement, and that the new offenses were similar in nature. Although defendant concedes that, "[a] sentence about [sic] the guideline range may have been appropriate in this case," he faults the district court for not indicating which of the factors under 18 U.S.C. § 3553(a) justified the departure.

However, the district court provided this reasoning:

I for more than one reason am going to go above [the guidelines' range] and sentence you to the maximum on that possible . . . . First of all, you committed four violations of your supervised release conditions here. Secondly, and even more importantly you committed them only nine days after you got out of prison.

So apparently the prison sentence that I gave you on the other – on the earlier case hasn't done you a bit of good because you went right back to exactly the same sort of criminal conduct, committed the same sort of fraud again. And therefore that's another reason why I think I'm justified then in giving you a – a[s] severe a sentence as is possible for your violations of supervised release.

And, thirdly, it's the same type of offense.

Although the district court may not have explicitly alluded to the section 3553(a) factors when imposing its sentence, several of them obviously apply here: the "nature and circumstances of the offense and the history and character of the defendant"; the need to protect the public; the promotion of respect for the law; and the need to promote deterrence. 18 U.S.C. § 3553(a). Accordingly, we affirm the imposition of a 24-month sentence for violation of supervised release.

**III.**

The judgment and sentences are **affirmed**.