NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0041n.06
Filed: January 11, 2008

No. 06-1049

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff-Appellee, | ) |
| | ) |
| v. | ) ON APPEAL FROM THE |
| | ) UNITED STATES DISTRICT |
| SANTANA ROMERO DOTTERY, | ) COURT FOR THE EASTERN |
| | ) DISTRICT OF MICHIGAN |
| Defendant-Appellant. | ) |

Before:      KEITH and ROGERS, Circuit Judges; and ALDRICH, District Judge.[*]

**DAMON J. KEITH, Circuit Judge.**  Defendant Santana Romero Dottery appeals the

sentence entered against him on December 22, 2005, by the Honorable David M. Lawson of the

United States District Court for the Eastern District of Michigan.  Defendant alleges that the district

court erred in refusing to apply the safety valve provision of the United States Sentencing Guidelines

("Sentencing Guidelines") to Defendant's sentence.  For the following reasons, we hold that the

district court did not err in refusing to apply the safety valve provision to Mr. Dottery's sentence, and

we therefore **AFFIRM** the sentence imposed by the district court.


**I.  FACTUAL BACKGROUND**

In an indictment filed December 17, 2003, Mr. Dottery was charged with three counts of

_____

[*]The Honorable Ann Aldrich, United States District Judge for the Northern District of
Ohio, sitting by designation.

criminal activity. Count 1 involved the use of a telephone in communicating and facilitating the distribution of a controlled substance in violation of 21 U.S.C. § 843(b). Count 2 involved possession with the intent to distribute five grams or more of crack cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii). And Count 3 charged Defendant with distributing 50 grams or more of crack cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(iii).

On April 5, 2005, Mr. Dottery pled guilty to Counts 1 and 3 of the indictment.[1] After Defendant's plea was entered, the parties met on November 8, 2005, for sentencing. At the sentencing hearing, the court observed that Defendant had met all the requirements necessary to qualify for the safety valve provision of the Sentencing Guidelines, except for the requirement that he be debriefed.[2] Also at the sentencing hearing, the court recognized that Defendant's attorney had filed a motion requesting that he be allowed to withdraw from the case. In arguing the motion, Mr. Dottery's attorney stated that he and Defendant had a "major disagreement" as to how to handle the debriefing. (JA 137.) In addition, Defendant's lawyer stated that Mr. Dottery had missed several scheduled appointments, including an appointment to meet with the Assistant United States Attorney and an agent of the government. In light of these issues, the district court decided to adjourn the

---

[1]Mr. Dottery attempted to plead guilty to Count 2. However, the district judge found that there was an insufficient factual basis for Count 2. Subsequently, the government filed a motion to dismiss Count 2, and their motion was granted on April 25, 2005.

[2]The safety valve provision of the Sentencing Guidelines instructs the court to impose a sentence within the applicable guidelines range without regard to any statutory minimum sentence if the court finds that the defendant meets certain criteria. The criterion the district court took issue with at this proceeding was whether Defendant had been debriefed by the government. The provision requires that the defendant "truthfully provide the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan . . . ." U.S.S.G. § 5C1.2(5).

sentencing hearing, postponing a ruling on Defendant's sentence and his counsel's motion.

The next sentencing hearing took place on December 14, 2005. At that hearing, the court opened the session stating that "the main issue in the case [was] whether or not Mr. Dottery will have the benefit of the so called safety valve . . . ." More specifically, the court noted that the debriefing requirement of the provision was particularly "problematic" because the government claimed Mr. Dottery had not "completely nor truthfully debriefed." (JA 149.) In response, Defendant's attorney claimed that Mr. Dottery had been debriefed since the November 8th hearing, but that the government deemed his debriefing insufficient because his statements did not coincide with those of their informants. The government claimed that one informant, Derrick Lee, told them that he was offered nine ounces of crack cocaine by Mr. Dottery, while another, Johnnie Whittington, stated that Defendant worked for someone else and was part of a group. Mr. Dottery denied both of the informants' assertions and refused to provide any information concerning their claims in his debriefing. To determine whether Defendant's debriefing was complete and truthful, despite the contradictory facts stated by Defendant and the informants, the district judge asked Defendant's attorney to read into the record a transcript of the debriefing.

After reading the transcript, the district judge noted five instances in which Mr. Dottery refused to answer the government's question. The first instance was when Defendant was asked how many times he had dealt with Tony Tinsley, the man Defendant identified in his debriefing as his source for the three ounces of crack. The second was when Mr. Dottery was asked if he knew where Tony Tinsley was at the moment. The third was when the government asked Mr. Dottery what side of the street Tony's residence was located. The fourth was when Defendant was asked if he knew

what Tony looked like. And the fifth was when the government asked Mr. Dottery if he had taken any trips with Tony.

In light of Mr. Dottery's refusal to answer the government's questions regarding his source, the district judge stated, "the court finds it very difficult, Mr. Dottery, to conclude that you have provided the government with a complete and truthful statement of everything you know about this offense or conduct relating to a common plan or scheme, meaning your involvement in the sale of cocaine, powder or crack, in the Saginaw area." (JA 163.) However, the Court went on to state, "you [will] be given an opportunity between now and [December 22, 2005] to cure the defects in your debriefing." (JA 163.) The Court thus adjourned Defendant's sentencing to December 22, 2005.

When the parties reconvened for sentencing on December 22, 2005, they were still unable to agree that Defendant had answered completely and truthfully. Mr. Dottery had been interviewed again by the government before his hearing, but his interview did not take place until the morning of his scheduled sentencing. The government claimed that because of the lateness of his interview, they were unable to verify whether the statements he gave during his interview were complete and truthful. In addition, the government sought information from Mr. Dottery regarding incidents that were not discussed at the previous sentencing. Namely, they wanted information regarding a prior dismissed marijuana charge, a potential incident of money laundering, and a $300,000 transaction. To resolve these issues, Mr. Dottery took the stand. He claimed that, following the December 14th hearing, he met with the government and answered their questions concerning Tony Tinsley. He stated that the reason he did not answer them initially was because Tony was a good friend of his and

he did not want to besmirch his name.

With regard to the new incidents, the government first questioned Defendant about the dismissal of a marijuana charge that arose out of New Mexico. The government asked Mr. Dottery if he was caught in New Mexico with five kilos of marijuana in his luggage. Defendant stated that originally police officers thought they had found marijuana in his luggage, but then realized the luggage belonged to someone else. Subsequently, Defendant claimed, the case was dismissed with prejudice. The district judge, however, stated that he had a statement from an agent indicating that Mr. Dottery had originally told him in an interview that the luggage was his.

In relation to the money-laundering incident, the government attempted to claim that in 2003 Mr. Dottery had two meetings with an individual during which he discussed trying to find a way to launder a substantial amount of money. When asked about the incident, Mr. Dottery claimed to have no knowledge of having any discussions with anyone about laundering money. To the contrary, the government's witness, DEA Agent Bruce Osterhagen, stated that Mr. Dottery did in fact meet with an informant to discuss ways to launder money. After hearing the testimony, however, the district court stated that "one could conclude the conversation had features of dealing with the defendant's credit and not laundering money itself." (JA 220.)

Lastly, while being cross-examined, Agent Osterhagen mentioned that there was a conversation had by Mr. Dottery discussing a transaction involving $300,000. However, Agent Osterhagen could not confirm that the money was ever retrieved.

In closing the sentencing hearing, the district judge restated that the issue before him was whether Defendant had fully debriefed since the December 14th hearing. He then mentioned that

the new information brought by the government was "disturbing" to him. (JA 220.) The incidents

he mentioned as disturbing were the New Mexico marijuana charge, the money laundering claim,

and the $300,000 transaction. The district judge then stated

> Mr. Dottery's debriefing in this case can only be characterized by me—I think I can
> only characterize it as reluctant. It was not a debriefing of the sort I believe that is
> contemplated by the letter or the spirit of the provision in Guideline Section 5C1.2.
> I determine, therefore, that the safety valve provision cannot be applied in this case,
> and the court will not apply it.

(JA 220-21.)

Subsequently, the district judge sentenced Defendant to 48 months in prison on Count 1, and

120 months on Count 3.

## II. STANDARD OF REVIEW

The Sixth Circuit has recognized that a district court decision as to whether the safety valve

is applicable is largely dependent on the district court's credibility determinations that cannot be

replicated with the same accuracy on appeal. *See United States v. Adu*, 82 F.3d 119, 124 (6th Cir.

1996). Accordingly, this Court reviews the district court's decision regarding whether a defendant

is entitled to the benefits of the safety valve for clear error. *United States v. Salgado*, 250 F.3d 438,

460 (6th Cir. 2001). A factual finding is clearly erroneous if "the reviewing court on the entire

evidence is left with the definite and firm conviction that a mistake has been committed." *United

States v. Navarro-Camachio*, 186 F.3d 701, 705 (6th Cir. 1999). We review the evidence "'in a light

most likely to support the district court's decision.'" *United States v. Braggs*, 23 F.3d 1047, 1049

(6th Cir. 1994) (quoting *United States v. Gomez*, 846 F.2d 557, 560 (9th Cir. 1988)).

### III. THE PROVISION AT ISSUE

Here, Mr. Dottery argues that the district court erred in not finding that he satisfied the debriefing requirement of the safety valve provision, U.S.S.G. § 5C1.2(5). To determine whether the court did indeed apply the provision incorrectly, it is first necessary to examine the language of the provision and how it has traditionally been interpreted by the Sixth Circuit. The relevant subsection of the provision reads:

> (5)    not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

§ 5C1.2(a)(5).

The Sixth Circuit has held that § 5C1.2(5) "clearly require[s] an affirmative act by the defendant truthfully disclosing all the information he possesses that concerns his offense or related offenses." *Adu*, 82 F.3d 119 at 124. The related offenses must be "part of the same course of conduct or of a common scheme or plan [as the convicted offense]." *Id*. (quoting § 5C1.2(5)). *See also United States v. Maduka*, 104 F.3d 891, 894 (6th Cir. 1997). A defendant's statement that he has given the government "all they asked," even if true, does not satisfy his burden of proof under the provision. *Id*. In addition, the disclosure requirement does not hinge on whether the particular conviction at issue happens to be for conspiracy or for a substantive drug offense. *Maduka*, 104 F.3d

at 894. If the ability of a defendant to commit a drug offense depends on the active participation of other people, information about such participation constitutes information about both "the offense of conviction" and "relevant conduct." *Id.*

The Court has stated that these stringent requirements reflect the fact that the safety valve "was intended to benefit only those defendants who truly cooperate." *United States v. O'Dell*, 247 F.3d 655, 675 (6th Cir. 2001) (quoting *United States v. Martin*, 144 F.3d 1085, 1094 (7th Cir. 1998), *cert. denied*, 525 U.S. 916 (1998)). The purpose of the Act was to "permit a narrow class of defendants, those who are the least culpable participants in such [drug trafficking] offenses, to receive strictly regulated reductions in prison sentences for mitigating factors currently recognized under federal sentencing guidelines." H.R. REP. NO. 103-460 (1994), 103d Cong., 2d Sess., *reprinted in* 1994 WL 107571 (Leg.Hist.), at 4 (emphasis added).

# IV. ANALYSIS

The district court record reveals that three sentencing hearings were held in which Defendant's debriefing was the point at issue. At the first hearing, Defendant's attorney indicated that he and Mr. Dottery had a "major disagreement" as to how the debriefing should be conducted. Consequently, Mr. Dotterry did not show up to scheduled appointments with the Assistant United States Attorney and an agent from the government. Despite Mr. Dottery's behavior, the district judge scheduled another sentencing hearing to give Defendant another chance to comply with the safety valve requirement. At the second hearing it was discovered that although Defendant had been interviewed by the government since the last hearing, he had refused to answer critical questions,

namely those concerning his source for crack cocaine. However, the district court again had mercy on Mr. Dottery, and scheduled another sentencing hearing to give him an opportunity to "cure the defects" in his debriefing. (JA 163.) At the third hearing it was revealed that Mr. Dottery waited until the morning of the hearing to be debriefed, thus making it difficult for the government to investigate and evaluate his answers before the proceeding. It was at this hearing that the district judge finally determined that Mr. Dottery's behavior throughout the sentencing process was not the type intended to be rewarded by the safety valve provision, and thus refused to apply it. We agree with the district court's decision and find no error in the manner in which it reached its decision.

Mr. Dottery argues on appeal that the district court incorrectly applied the safety valve provision because it based its decision on his response to questions concerning events that were not relevant to his convicted offense. Mr. Dottery claims that the district court denied him the safety valve because of his responses to questions related to 1) a marijuana charge arising out of an incident in New Mexico, 2) his alleged plan to launder money, and 3) a conversation concerning a $300,000 transaction. Mr. Dottery's assertion, however, is incorrect. Although the three incidents aforementioned were discussed at Defendant's last sentencing hearing, they did not serve as the basis of the district court judge's decision to deny Defendant the safety valve. The district judge made that decision based on the degree of reluctance Defendant exhibited throughout the debriefing process. As the district judge stated, "Mr. Dottery's debriefing in this case can only be characterized by me—I think I can only characterize it as reluctant. It was not a debriefing of the sort I believe that is contemplated by the letter or the spirit of the provision in Guideline Section 5C1.2." (JA 220-21.)

As mentioned previously, the safety valve provision "was intended to benefit only those

defendants who truly cooperate." *United States v. O'Dell*, 247 F.3d 655, 675 (6th Cir. 2001) (quoting *United States v. Martin*, 144 F.3d 1085, 1094 (7th Cir. 1998), *cert. denied*, 525 U.S. 916, 119 S.Ct. 265, 142 L.Ed.2d 218 (1998)). It cannot be said that Mr. Dottery "truly cooperated." In fact, it can barely be said that he cooperated at all. Mr. Dottery missed scheduled meetings with the government, and when he did meet with them he would either fail to answer all of their questions, or meet with them at a time that would not allow the government to verify his answers. Thus, the district court was correct in finding that his actions indicated a resistance to the debriefing process.

Mr. Dottery also argues that he fully cured the defects in his debriefing indicated by the district judge, and thus should be granted the safety valve provision. At Defendant's second sentencing hearing, the district judge noted that Mr. Dottery did not give the government requested information regarding his alleged source for crack cocaine, Tony Tinsley. Thus, the district court scheduled another sentencing hearing to give Defendant time to "cure the defects" in his debriefing. (J.A. 163.) Defendant contends that what the court meant by that statement was that Defendant's debriefing would be complete if he were to simply answer questions about Tony Tinsley. After the second hearing, Mr. Dottery answered the government's questions about Mr. Tinsley; thus, Defendant claims, he complied with the debriefing requirement.

Although we do not agree with Defendant's narrow interpretation of the district judge's statement, accepting his interpretation as correct, his argument fails nonetheless. As stated by this Court in *Adu*, 82 F.3d at 124, a defendant's statement that he has given the government "'all they asked,'" even if true, does not satisfy his burden of proof under the provision. As previously stated, the safety valve provision is for those who "truly cooperate." True cooperation is not merely

answering the questions the government thinks to ask, but assertively volunteering all relevant information about one's offense or related offenses. Defendant's behavior here falls well short of that standard. Thus, the district court was correct in denying Defendant the benefits of the safety valve provision.

## V. Conclusion

For the aforementioned reasons, we **AFFIRM** the district court's decision and Defendant's sentence.