**NOT RECOMMENDED FOR PUBLICATION**
File Name: 11a0877n.06

**No. 09-6424**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

**Dec 23, 2011**

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| | ) | THE MIDDLE DISTRICT OF |
| CHRISTINA CARDONA, | ) | TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |

Before:  BATCHELDER, Chief Judge; SILER and COLE, Circuit Judges.

**SILER**, Circuit Judge.  Defendant Christina Cardona pled guilty to conspiracy to distribute

and to possess with intent to distribute five kilograms or more of cocaine and possession with intent

to distribute five kilograms or more of cocaine.  The district court determined that Cardona was not

entitled to an offense level reduction for acceptance of responsibility under USSG § 3E1.1(a) or the

safety valve reduction under 18 U.S.C. § 3553(f) and USSG § 5C1.2.  It sentenced Cardona to 151

months of imprisonment.  Cardona challenges the district court's denial of the acceptance of

responsibility and safety valve reductions.  For the reasons stated below, we **AFFIRM**.

I.

Law enforcement officers arrested Cardona in 2007 in Nashville, Tennessee, after they found

23 kilograms of cocaine in a hidden compartment in her truck.  Cardona drove her truck from Texas

to a Nashville hotel, where she met with a confidential informant, an undercover DEA agent, and

a co-conspirator named Albert Sais.  Sais had flown to Nashville to confirm the presence of the $500,000 "buy money."  Sais then drove Cardona's truck, with Cardona in the passenger's seat, toward a warehouse where the deal was to take place.  They were stopped en route, and a subsequent search revealed the cocaine.

Cardona was indicted on two counts: (1) conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846; and (2) possession with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.  The indictment alleged the conspiracy began "not later than on or about July 10, 2007, the exact date being unknown to the Grand Jury."

A trial was scheduled to begin in June 2009.  In addressing preliminary matters, Cardona's attorney requested a continuance because on the previous day, the government informed him that it intended to introduce the testimony of Rubin Hernandez and Rosa Avalos in its case in chief.  The government proffered that these witnesses would testify that they observed Cardona acting as a drug courier in 2005 and 2006 by having drugs loaded into her truck at Robert Drury's residence.  The witnesses believed the source of the cocaine in 2005 and 2006 was a man named Arqui.  Arqui was also the source of the cocaine in the 2007 trip to Nashville.  The district court denied the request for a continuance and selected a jury.

The next day, the government filed a motion in limine, asking the court to permit the testimony of Hernandez and Avalos.  The district court ruled that the testimony was admissible as background evidence.  Immediately after this ruling, Cardona pled guilty.  During the plea proceeding, the government presented the facts underlying the offenses, focusing particularly on the

events leading to the seizure of the cocaine in 2007, but also noting that it would have presented

testimony that Cardona acted as a drug courier going back to 2005. After Cardona's counsel noted

that some of the facts were disputed, the following exchange occurred:

> [District Court:] Do you dispute the facts that you were driving a truck that had 23 kilograms of cocaine, that you met and discussed this matter with Mr. Sais, and that this cocaine was being transported for sale in the Middle District of Tennessee? Do you dispute that?
>
> [Cardona:] I did drive the vehicle up here, but I was not driving at the time when –
>
> . . .
>
> [District Court:] But the other facts stated by the Court are true?
>
> [Cardona:] Yes.

When asked to explain in her own words what she did, Cardona replied:

> Your Honor, I drove my vehicle from Texas up here to Nashville. And I met with who was then my boyfriend, Albert Sais.[1] And we got pulled over, and we were arrested. And then there was 23 kilos discovered in my vehicle, from what I've seen in pictures and what has been said by Mr. Hannafan. And that's it.

At a later sentencing hearing, the district court agreed with the government's position that

Cardona did not qualify for the safety valve reduction because she had not fully cooperated with the

government. Specifically, the government contended that she did not qualify because, during her

proffer, she would discuss only the single trip to Nashville, and not prior trips as a courier for the

same supplier. The district court granted a continuance of 17 days to give Cardona additional time

to reevaluate her position and decide whether to give a second proffer. Cardona did not meet with

---

[1] Sais was not her boyfriend on the date of arrest.

the government again. Instead, she continued to argue that she did not need to provide additional information outside of the trip to Nashville in 2007.

The government called DEA Agent Matt Bradford to offer proof that Cardona was involved in the same conspiracy dating back to 2005. Bradford testified that Hernandez told him he saw Cardona having her vehicle loaded with marijuana or cocaine at Drury's garage in 2005. According to Bradford, Drury maintained a residence on the Rio Grande for storing drugs transported into the United States, and both Drury and Cardona worked for Arqui. Bradford also testified that Avalos told him she was stopped and arrested while transporting drugs in a truck registered to Cardona. Avalos also said that Drury had talked about Cardona's being a courier for him. Based on this testimony and because Cardona refused to discuss anything outside of the 2007 trip to Nashville, the district court concluded that Cardona did not qualify for the safety valve reduction.

The district court also denied Cardona an offense level reduction for acceptance of responsibility because "she appear[ed] to be denying the facts that were the predicate for the sentencing." The court thus calculated a total offense level of 34 and criminal history category I, resulting in a Guidelines range of 151 to 188 months. It then sentenced Cardona to 151 months of imprisonment.

## II.

Whether a defendant is entitled to a reduction for acceptance of responsibility is a "'factual question, and should be accorded great deference . . . .'" *United States v. Webb*, 335 F.3d 534, 538 (6th Cir. 2003) (quoting *United States v. Miller*, 45 F. App'x 359, 364 (6th Cir. 2003)). The district court's decision on this issue should not be disturbed unless clearly erroneous. *Id*. at 538. Because

the safety valve determination is also a factual question, we apply a clearly erroneous standard of review to this determination as well. *United States v. Haynes*, 468 F.3d 422, 426 (6th Cir. 2006).

A.

The Sentencing Guidelines provide, "If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels." USSG § 3E1.1(a). The Guidelines contain a number of considerations a district court may take into account when determining the appropriateness of the reduction, including "the timeliness of the defendant's conduct in manifesting the acceptance of responsibility," "voluntary termination or withdrawal from criminal conduct or associations," and "voluntary surrender to authorities promptly after commission of the offense." *Id.*, cmt. n.1. Many of these considerations do not apply favorably to Cardona, as she did not voluntarily withdraw or surrender, and she decided to plead guilty after a jury had already been impaneled.

Cardona identifies one factor in the Guidelines she believes applies to her. The Guidelines suggest that a reduction for acceptance of responsibility may be appropriate if the defendant "truthfully admitt[ed] the conduct comprising the offense(s) of conviction, and truthfully admitt[ed] or [did] not falsely deny[ ] any additional relevant conduct . . . ." USSG § 3E1.1, cmt. n.1(A). Cardona points to the fact that she admitted to "driving a truck that had 23 kilograms of cocaine," meeting and discussing "this matter" with a co-defendant, and that the cocaine "was being transported for sale in the Middle District of Tennessee."

A defendant is not automatically entitled to the two-level decrease simply because she pleads guilty. Instead, she must "clearly demonstrate" acceptance of responsibility for the offense and prove

that she is entitled to the reduction by a preponderance of the evidence. USSG § 3E1.1, cmt. n.2-3; *United States v. Tucker*, 925 F.2d 990, 991 (6th Cir. 1991).

When describing the offense in her own words, Cardona misrepresented certain aspects of the offense and failed to admit the intent element. She later admitted that Sais was not, in fact, her boyfriend at the time of the offense. By alleging that Sais was her boyfriend, Cardona implied that the purpose of the trip from Texas to Nashville was to meet with her boyfriend, rather than to transport cocaine and meet with an unknown person who would count "buy money" for the cocaine. Additionally, the wording of Cardona's statement implies she only knew cocaine was in her vehicle because she saw it in pictures and heard about it from the Assistant United States Attorney. This false representation is the kind of conduct that is "inconsistent with . . . acceptance of responsibility." *See* USSG § 3E1.1, cmt. n.3.

### B.

The safety valve reduction, found in 18 U.S.C. § 3553(f) and USSG § 5C1.2, allows a district court to disregard a statutory minimum in certain drug-related offenses if five conditions are met. A defendant bears the burden of proving by a preponderance of the evidence that she is entitled to the reduction. *Haynes*, 468 F.3d at 427; *United States v. Salgado*, 250 F.3d 438, 459 (6th Cir. 2001).

In this case, the parties agree that the first four elements are met, but the United States argues the fifth is not. According to this fifth condition, the defendant must fully disclose to the government all information he or she has "concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan." 18 U.S.C. § 3553(f)(5); USSG § 5C1.2(a)(5). The

purpose of this provision is to give a lesser participant in a crime credit for providing the government with information related to the offense. *United States v. O'Dell*, 247 F.3d 655, 674 (6th Cir. 2001).

Cardona argues she is eligible for the safety valve reduction because she provided information to the government related to the cocaine transport from Texas to Tennessee that took place in 2007. Her position on appeal is that she only needed to provide information about this one trip to be eligible for the safety valve reduction. The government believes Cardona and the other named co-defendants (Sais and Farrera-Grajales), along with Arqui, Drury, Hernandez, and Avalos engaged in a conspiracy starting well before 2007 to import cocaine from Mexico and distribute it into the United States. Its position is that to receive the safety valve reduction, Cardona was required to provide information she had, not only about the 2007 trip, but also about her involvement in the conspiracy dating back to 2005.

The United States proffered evidence to the district court indicating that Cardona was involved in the conspiracy at least as early as 2005. At the safety valve proffer meeting, Cardona refused to give any information related to these proffered witnesses or her previous dealings as a drug courier for Drury or Arqui. After the safety valve proffer meeting, the United States sent Cardona a letter explaining that she had not met the requirements of § 3553(f)(5) and was thus ineligible for the safety valve. The letter explained that Cardona was ineligible because she would not answer questions about prior trips she had made as a courier for Arqui, how she began working for him, and how many times she was a courier for him. The United States concluded the letter by offering to meet with Cardona again. The district court also gave Cardona an additional opportunity to provide this information to the government, but she never took advantage of these opportunities.

Thus, the United States ultimately did not recommend a safety valve reduction for Cardona because it did not believe she "truly cooperated." *See O'Dell*, 247 F.3d at 675.

To benefit from the safety valve provisions, a defendant must provide information regarding not only the offense of conviction, but also any relevant conduct. "True cooperation is not merely answering the questions the government thinks to ask, but assertively volunteering all relevant information about one's offense or *related offenses*." *United States v. Dottery*, 259 F. App'x 812, 818 (6th Cir. 2008) (emphasis added); *see* USSG § 5C1.2, cmt. n.3; *Salgado*, 250 F.3d at 459 (holding that a defendant must provide information about other "relevant conduct").

"Relevant conduct" is "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant." USSG § 1B1.3(a)(1)(A). As the district court pointed out to defense counsel, there is no time limit in either § 1B1.3 or § 5C1.2 of the Guidelines. The district court found that the 2005 and 2006 evidence was "inextricably intertwined with the charged offense," and it "help[ed] complete the story as to how the conspiracy operated, the method by which drugs were trafficked, [and] the tie of the defendant to other conspirators in this case." It noted that Cardona's earlier drug activities involved many of the same parties and the same type of operation as the 2007 incident. Regardless of whether Cardona's involvement as a drug courier in 2005 and 2006 was part of the same conspiracy charged in the indictment, it qualifies as relevant conduct. Thus, Cardona was under an obligation to disclose this information to qualify for the safety valve reduction. Because she refused to do so after repeated opportunities, the district court did not err in refusing to apply the safety valve reduction.

**AFFIRMED**.